SEALED   04-1682-CBS

<u>Affidavit of Special Agent Michael P. Curran</u>

I, Michael P. Curran, being duly sworn, do hereby depose and state the following:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice ("ATF") and have been so employed since September 1998. Previously, I was employed as a Special Agent with the U.S. Immigration and Naturalization Service for approximately two years. My responsibilities include investigating and enforcing the federal firearms laws. I attended the Criminal Investigator Training Program, at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia, from February 1998 to April 1998, where I received training and instruction as a Special Agent, including firearms training, the execution of search and arrest warrants, investigative techniques, and legal instruction which covered Fourth Amendment searches and seizures. Subsequently, from March 1999 to July 1999, I attended specialized training known as New Professional Training ("NPT") through ATF, at FLETC, where I received instruction in firearms technology and identification, firearms trafficking, explosives, and arson. During my career as a Special Agent, I have participated in the execution of numerous arrest warrants and search warrants.

SEALED

1

DOCKETED 

2.  From my training and experience, I know it is a violation of Title 18, United States Code, Section 922(g)(1) for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess or receive any firearm which has been shipped or transported in interstate or foreign commerce.

3.  The information contained in this affidavit is based on my personal involvement in this investigation, my training and experience, my review of documents, and information provided to me by other law enforcement officers. This affidavit does not contain all of the information that I possess about this investigation, but only that which is necessary to support the issuance of a criminal complaint.

4.  This affidavit is submitted in support of a criminal complaint charging Louis E. HANLEY, Sr., date of birth July 22, 1950, social security number 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, residing at 1217 South High Street in Bridgton, Maine, with a violation of Title 18, United States Code, Section 922(g)(1).

5.  From in or about October 19, 1992 to in or about December 12, 2003, Nancy Hanley was a resident of 144A Dorchester Street, in Worcester, MA, a public housing unit which is maintained by the Worcester Housing Authority ("WHA"). In or about December 2003, the WHA evicted Nancy Hanley from the

residence since her son, Louis E. Hanley, and two others, resided at the 144A Dorchester Street, without permission to do so. On December 17, 2003, as part of a routine, post-eviction inspection of the premises, which includes changing the locks, WHA employees located certain property within the premises, including: a Browning shotgun, model Light 12, 12 gauge caliber, serial number 5G83967; a spare barrel for the shotgun; and a pellet gun (which is not, based on my preliminary inspection, a firearm). The Browning shotgun was found in a closet. The WHA employees who recovered the property, contrary to WHA policy, kept the property for themselves. One WHA employee took the shotgun and spare barrel and transferred them to a third-party. Another WHA employee took the pellet gun and kept it in his work locker.

6. Shortly after the eviction, at some point between December 17 and December 30, 2003, HANLEY called the WHA and reported that his shotgun was left at 144A Dorchester Street, and HANLEY wanted it back. On or about December 30, 2003, Amanda Brady ("Brady"), of the WHA, contacted HANLEY. HANLEY told Brady that he had left the shotgun in a living room closet. HANLEY said that he could be contacted at a telephone number with a Maine area code.

7. Subsequent investigation by the WHA, in an effort to track down the property, disclosed that two WHA employees removed the shotgun, barrel, and pellet gun from the premises. On or about December 31, 2003, Angel Rosario, WHA Administrator of Public Safety, interviewed both employees, who admitted that they removed the weapons from the premises, contrary to WHA policy. Both WHA employees surrendered the property.

8. On January 5, 2004, Housing and Urban Development Office of the Inspector General (HUD OIG) Special Agent Gene Westerlind took custody of the Browning shotgun, spare barrel and pellet gun. Westerlind contacted me and notified me of the situation.

9. On January 8, 2004, HANLEY, again, called the WHA and spoke with Angel Rosario. HANLEY provided a date of birth of July 22, 1950 and social security number of 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 to Rosario. HANLEY again stated that he wanted his shotgun back. Rosario stated that HANLEY would be contacted when the firearm could be released.

10. On January 23, 2004, HUD OIG Special Agent Gene Westerlind made a consensually monitored telephone call to the Maine telephone number provided by HANLEY. Westerlind identified himself as "Gene from Worcester Housing." Westerlind asked for

Louis HANLEY, who replied "speaking." Westerlind told HANLEY that he would like to set up an appointment for HANLEY to pick up his property. Westerlind asked HANLEY what property he would be picking up, and HANLEY replied, "my shotgun and pellet gun." HANLEY also stated that he would be coming in from Maine. Westerlind provided HANLEY with directions to 69 Tacoma Street, in Worcester, MA, which is an office of the WHA.

11. On February 3, 2004, HANLEY called the WHA, which transferred the telephone call to Special Agent Gene Westerlind. This call was consensually monitored and recorded. HANLEY and Westerlind agreed upon a time of 2:00 PM later that day for HANLEY to meet with Westerlind. Westerlind, again, provided directions to 69 Tacoma Street, in Worcester, MA.

12. Later on February 3, 2004, an office at 69 Tacoma was outfitted with a hidden video recorder. Special Agent Westerlind was outfitted with a hidden recorder and a transmitter, as well. Shortly before 2:00 PM, on February 3, 2004, a vehicle with Maine license plates pulled up outside 69 Tacoma in Worcester, MA. This vehicle was registered in HANLEY's name. Through WHA surveillance cameras, I observed a male fitting HANLEY's description exiting that vehicle.

13. A few minutes later, HANLEY entered 69 Tacoma Street and was sent to meet Special Agent Gene Westerlind in an office in that building. Westerlind, again, assumed the role of a WHA employee. A transcript of this meeting is attached hereto as Exhibit A and incorporated herein. The meeting was video and audiotaped. Westerlind accepted a Maine Driver's License from HANLEY for the purposes of identification. HANLEY also signed a receipt for the Browning shotgun, extra barrel, and pellet gun. Westerlind took the Driver's License that HANLEY presented for identification and photocopied it.

14. During this meeting with Westerlind, Westerlind displayed the shotgun to HANLEY. HANLEY took the Browning shotgun into his hands and identified it as his own. After holding the shotgun and acknowledging that it was his own, HANLEY placed the weapon down on the table in front of him, well within reach.

15. At the conclusion of the meeting, I, along with several other agents entered the room and identified ourselves as law enforcement agents. For the safety of the agents, I placed handcuffs on HANLEY, advised him of his <u>Miranda</u> rights, and conducted a pat frisk, which turned up no weapons. Following the pat frisk, HANLEY stated that he understood these rights and

agreed to talk, at which point I removed the handcuffs. HANLEY told me that the shotgun which Special Agent Westerlind showed him, and he had just held in his hands, was the same one he has possessed since he was approximately 16 years old and the one that HANLEY left at 144A Dorchester Street, in Worcester, MA.

16. I explained to HANLEY that he was not under arrest. I asked HANLEY if he would voluntarily agree to meet me at the ATF office in Worcester, and HANLEY stated that he would. HANLEY left in his own vehicle. A short while later, HANLEY appeared at the office.

17. At the ATF office, I, again, advised HANLEY of his Miranda rights. HANLEY stated that he understood these rights and agreed to waive them. I told HANLEY that he was not under arrest and free to leave at any time. HANLEY provided me with a written statement regarding his possession of the Browning shotgun. A copy of that statement is attached hereto as Exhibit B and incorporated herein. HANLEY told me that he had possessed the Browning shotgun for most of his life, and has sometimes stored it at his mother's house. HANLEY stated that he lived with his mother from January until June 2003, at 144A Dorchester Street, in Worcester, MA. When HANLEY lived at 144A Dorchester Street, he stored the Browning shotgun at that residence. HANLEY also

admitted to three convictions: two for Domestic Assault and Battery in Worcester District Court; and one for Conspiracy to Distribute Cocaine in Worcester Superior Court.

18. Special Agent Westerlind obtained WHA documents relating to the occupancy of 144A Dorchester Street in Worcester. WHA records indicate that 144A Dorchester was occupied by Nancy Hanley (Louis HANLEY's mother) until December 2003. The documents also reflect that in May 2003, Louis HANLEY Sr., son of Nancy Hanley, admitted to a WHA Director of Management that he was living at 144A Dorchester Street, but would be leaving on June 1, 2003. The file also reflects numerous other incidents, which indicated to WHA that HANLEY resided at 144A Dorchester Street.

19. I obtained records from Worcester District Court regarding HANLEY. Worcester District Court Docket number 0062CR005508 shows that Louis HANLEY, date of birth July 22, 1950 was convicted of Massachusetts General Law Chapter 265, Section 13A, Domestic Assault and Battery in July 2001. This offense carries a potential punishment of up to 2 ½ years imprisonment in a house of correction. Worcester District Court Docket number 9962CR006002 shows that Louis HANLEY, date of birth July 22, 1950, was convicted of Massachusetts General Law Chapter 265, Section 15A For Domestic Assault and Battery with a Dangerous

Weapon in February 2000. This offense carries a potential penalty of up to 10 years imprisonment in a State Prison.

20. I obtained records from Worcester Superior Court regarding HANLEY. Worcester Superior Court Docket number 86-113585 shows that Louis HANLEY was convicted of Massachusetts General Laws Chapter 94C, Section 40, Conspiracy to Unlawfully Distribute a Controlled Substance, to wit, Cocaine. This charge carries a potential penalty of up to 10 years imprisonment in a State Prison.

21. On February 13, 2004, I spoke with a representative from the Massachusetts Governor's Council on Pardons. The representative informed me that they had no record of Louis HANLEY, date of birth July 22, 1950, filing for or receiving a pardon from the Commonwealth of Massachusetts.

22. I provided a description of the Browning shotgun, model Light 12, 12 gauge caliber, serial number 5G83967, to ATF Special Agent Kurt Wheeler, who has received specialized training in the interstate nexus of firearms, regarding firearms identification and origin. Wheeler told me that the Browning shotgun is not manufactured in Massachusetts, and has therefore traveled in interstate and foreign commerce into Massachusetts.

23. Based on the above, I believe that probable cause exists to conclude that from on or about January 2003 until June 2003, and on February 3, 2004, Louis HANLEY did possess, in Worcester, Massachusetts, subsequent to a conviction of a crime punishable by imprisonment for a term exceeding one year, a firearm which has been shipped or transported in interstate or foreign commerce to wit: a Browning shotgun, model Light 12, 12 gauge caliber, serial number 5G83967, in violation of Title 18, United States Code, Section 922(g)(1).

_____
Michael P. Curran, Special Agent
U.S. Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to me this 25th day of February, 2004.

_____
CHARLES B. SWARTWOOD, III
United States Magistrate Judge